UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BOLTEX MANUFACTURING §
COMPANY, LP, *et al.*, §
 §
 *Plaintiff*s, §
 §
v. § CIVIL ACTION H-17-1439
 §
GALPERTI, INC., *et al.*, §
 §
 *Defendants*. §

### MEMORANDUM OPINION AND ORDER

Pending before the court is defendant Officine Nicola Galperti e Figlio S.p.A.'s ("ONG") motion to dismiss for lack of personal jurisdiction. Dkt. 19 at 1–21. Plaintiffs Boltex Manufacturing Company, L.P. ("Boltex") and Weldbend Corporation ("Weldbend") (collectively, "Plaintiffs") responded. Dkt. 26. ONG replied. Dkt. 28. The parties filed supplemental briefing after conducting jurisdictional discovery. Dkts. 54, 59. Having considered the motion, response, reply, supplemental briefing, and applicable law, the court is of the opinion that ONG's motion should be DENIED.

### I. BACKGROUND

In this false advertising case, all parties manufacture carbon steel flanges.[1] Dkt. 1 at 1–3. Boltex is a Texas limited partnership with its principal place of business in Houston, Texas. *Id.* at 2. Weldbend is a Delaware corporation with its principal place of business in Argo, Illinois. *Id.* ONG's principal place of business is in Italy. *Id.* at 3.

---

[1] For the purposes of a motion to dismiss, the court accepts all well-pled facts contained in Plaintiffs' complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). In addition, co-defendant Galperti, Inc. (with a principal place of business is in Houston, Texas) is not a party to this motion. Dkt. 1 at 3.

This dispute centers on normalization, a heat treatment process that changes the physical composition of carbon steel to increase its machinability and toughness. *Id.* at 1, 8. Because the process involves additional time and resources, it costs manufacturers more to produce normalized flanges than non-normalized (or forged) ones. *Id.*

The American Society of Testing and Materials ("ASTM") sets out standards requiring manufacturers to apply heat treatment to certain types of flanges.[2] *Id.* at 8–9. Manufacturers can choose from several processes including normalization. *Id.* However, many customers will only purchase certain flanges if they are normalized. *Id.* Additionally, customers "generally select and purchase flanges based upon price alone." *Id.* at 17.

Plaintiffs manufacture, market, and sell normalized flanges. *Id.* at 9. Plaintiffs' normalization processes comply with ASTM standards. *Id.* at 8–9. Plaintiffs indicate that compliance by: (1) stamping normalized flanges and (2) noting normalization in an industry-standard report. *Id.* at 10. Further, Plaintiffs charge more for normalized flanges than they do for forged ones. *Id.*

ONG advertised some of its flanges as normalized and as compliant with ASTM standards.[3] *Id.* at 11, 16. Customers believed those flanges were "of the same quality and meet the same standards as Plaintiffs' flanges . . . ." *Id.* at 16. But, ONG's flanges were not normalized. *Id.* Thus, they did not comply with ASTM standards. *Id.* at 18.

Texas-based ONG customers interested in buying normalized, ASTM-compliant flanges emailed ONG for price quotes. Dkt. 54 at 5. ONG's emailed responses indicated that its flanges met

---

[2]This case deals with a particular standard: ASTM A105. Dkt. 1 at 8.

[3]Plaintiffs' complaint combines allegations about ONG and Galperti. Dkt. 1.

those criteria. *Id.* at 5–6. Then, ONG sold those flanges to multiple customers in Texas. *Id.* at 5–7. And, ONG sold those flanges for less than the cost of Plaintiffs' normalized flanges, charging "about the same price at which [Plaintiffs] sell their 'as forged' (non-normalized) flanges." Dkt. 1 at 16. As a result, customers who wanted to buy normalized, ASTM-compliant flanges purchased those flanges from ONG, and not from Plaintiffs. *Id*.

Plaintiffs sued Defendants for false advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), as well as common law unfair competition. *Id.* at 23. In the instant motion, ONG moves to dismiss for lack of personal jurisdiction. Dkt. 19.

## II. LEGAL STANDARD

A court must dismiss an action when it lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). When a non-resident defendant moves to dismiss for lack of personal jurisdiction, the resident plaintiff has the burden of establishing a prima facie showing that the defendant is subject to personal jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001); *see also Bullion v. Gillespie*, 895 F.2d 213, 216–17 (5th Cir. 1990). "Proof by a preponderance of the evidence is not required." *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545–46 (5th Cir. 1985).

In a diversity action, a federal court may exercise personal jurisdiction over a non-resident defendant if: (1) the long-arm statute of the forum state allows the exercise of personal jurisdiction over that defendant, and (2) the exercise of personal jurisdiction over that defendant is consistent with due process under the U.S. Constitution. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). This two-step personal jurisdiction inquiry collapses into one federal due process analysis because the Texas long-arm statute extends to the limits of federal due process. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S. Ct. 1868 (1984)).

To satisfy due process, the plaintiff must show: "(1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.1994)). Minimum contacts are established through the assertion of either general or specific jurisdiction. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867(5th Cir. 2001). Here, the parties only dispute whether specific jurisdiction exists. Dkt. 41 at 2–3, 5–6; Dkt. 59 at 7.

Specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846 (2011) (internal citations omitted). Specific jurisdiction exists when the plaintiff's claim against the non-resident defendant arises out of or relates to activities that the defendant purposefully directed at the forum state. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174 (1985)). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of the defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S.Ct. 1773, 1779 (2017). If the nonresident defendant's contact are singular or sporadic, specific jurisdiction is proper "only if the cause of action asserted arises out of or is related to those contacts." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016).

"A court considers two issues in deciding whether a defendant's suit-related conduct creates a sufficient relationship with the forum state." *Havel v. Honda Motor Europe Ltd.*, Civil Action No. H-13-1291, 2014 WL 4967229, at *7 (S.D. Tex. Sep. 30, 2014) (Rosenthal, J.) (citing *Walden v.*

4

*Fiore*, 134 S.Ct. 1115, 1121 (2014)). "First, the relationship must arise out of contacts that the defendant himself creates with the forum State." *Walden*, 134 S.Ct. at 1122. "Second, the minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (citations omitted). "[A] defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1123.

Once minimum contacts have been established, the defendant has the burden to establish a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *In re Chinese Manufactured Drywall Products Liab. Litig.*, 742 F.3d 576, 592 (5th Cir. 2014); *see also Guidry v. United States Tobacco Co., Inc.*, 188 F.3d 619, 630 (5th Cir. 1999). "[T]he determination of the reasonableness of the exercise of jurisdiction in each case will depend on an evaluation of several factors." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113, 107 S.Ct. 1026 (1987). "When determining the fundamental fairness issue this court will normally examine (1) the defendant's burden; (2) the forum state's interests; (3) plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in obtaining efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Guidry*, 188 F.3d at 630.

### III. ANALYSIS

**1.　Sufficient contacts with Texas**

In *Bristol-Myers*, the Supreme Court explained that specific jurisdiction requires "a connection between the forum and the specific claims at issue." 137 S.Ct. at 1781. *Bristol-Myers* determined that California courts lacked specific jurisdiction over nonresidents' pharmaceutical

5

products liability claims when those nonresidents failed to allege that the product harmed them in California. *Id.* Indeed, "the mere fact that *other* plaintiffs were prescribed, obtained, and [had] ingested [the drug] in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* (emphasis in original).

Here, nonresident-defendant ONG challenges the court's specific personal jurisdiction by arguing that its alleged contacts lack a connection to Plaintiffs' claims. Dkt. 19; Dkt. 59 at 10. Plaintiffs allege multiple Texas contacts. Dkt. 28 at 2–4; Dkt. 54 at 5–11. Namely, Plaintiffs allege that: (1) ONG established a network of Master Distributors and Distributors in Houston; (2) ONG sold flanges to Galperti which then resold the flanges to Texas customers; (3) ONG's Chief Executive Officer, Andrea Galperti, visited Houston; (4) ONG representatives attended Texas trade shows; (5) Mr. Galperti participated in industry roundtable events in Texas; (6) ONG participated in a lawsuit in Texas; and (7) ONG responded, via email, to Texas customers' requests for quotes. *Id*. For the instant motion, the court will only analyze ONG's emails.[4] *Id.*

Plaintiffs bring three separate claims: (1) false advertising in violation of the Lanham Act; (2) unfair competition in violation of the Lanham Act; and (3) common law unfair competition. Dkt. 1 at 23. The parties seem to think that the outcome of this motion turns on whether the emails count as "advertising" under Section 43(a) of the Lanham Act. *See, e.g.,* Dkt. 54 at 9; Dkt. 59 at 8. It does not. Instead, it turns on whether there is a connection between the alleged contacts (the

---

[4]Beyond the emails, ONG challenges the accuracy of some of the other jurisdictional allegations. Dkt. 28 at 4–7. ONG also raises evidentiary objections. *Id.* The court does not need to address these issues because the emails resolve the jurisdictional question.

emails) and Plaintiffs' claims (the Lanham Act violations and the common law unfair competition). *See Bristol-Myers*, 137 S.Ct. at 1781. Because that connection exists, specific jurisdiction does, too.[5]

### a. *False advertising in violation of the Lanham Act*

Plaintiffs allege that ONG violated Section 43(a) of the Lanham Act by advertising, promoting, distributing, and selling its flanges as if they were normalized and ASTM-compliant, when they were not. Dkt. 1 at 19. Specifically, ONG "ma[de] false and misleading statements in advertising and promotions, *including* . . . on the flanges themselves, and on the accompanying [industry-standard report] . . ." *Id.* (emphasis added). As a result, ONG "created the false impression that [its] flanges are normalized" and that they are ASTM-compliant. *Id.*

The crux of this claim is that ONG advertised its flanges as something they were not. *See id.* Plaintiffs allege that such advertising occurred in ONG's emails to Texas-based customers. Dkt. 54 at 8–9. Thus, Plaintiffs allege that the emails constitute false advertising. Accordingly, the claim is directly connected to the emails. That satisfies *Bristol-Myers*. *See* 137 S.Ct. at 1781. As a result, specific jurisdiction exists and the court has personal jurisdiction over ONG.

---

[5]ONG's email-related arguments miss the mark. *See* Dkt. 59 at 15. First, ONG conflates the issue of forming a contract with Texas-based customers and its emailed responses to those customers seeking quotes. *See id.* at 11. Contract formation is irrelevant because the question is whether ONG's emailed responses count as contacts that are linked to Plaintiffs' claims. Plaintiffs did not sue for breach of contract. Next, ONG argues that Plaintiffs' complaint lacks any factual allegations about ONG's emailed responses. *See id.* And, ONG argues that the complaint lacks claims "basing personal jurisdiction upon ONG's alleged response to a private inquiry from a customer seeking to purchase a carbon steel flange." *Id.* It is unclear what standard ONG used to evaluate Plaintiffs' complaint and briefing. However, all that Plaintiffs needed to do was allege that ONG's contacts with Texas (the emails) connect to the specific claims at issue (Lanham Act violations and common law unfair competition). *See Bristol-Myers*, 137 S.Ct. at 1781. Plaintiffs have done so.

### b. *Unfair competition in violation of the Lanham Act*

Plaintiffs also allege that ONG's acts amounted to unfair competition in violation of Section 43(a). Dkt. 1 at 21. Specifically, Plaintiffs allege this occurred when ONG marketed its flanges as "equivalent to but cheaper than" Plaintiffs' normalized, ASTM-compliant flanges. *Id*. As a result, ONG "caused confusion, mistake, or deception about the nature, characteristics" of its own flanges "in comparison, connection, or association with Plaintiffs' flanges." *Id.*

Here, Plaintiffs allege that ONG engaged in unfair competition when it marketed its flanges. Plaintiffs allege that marketing occurred through ONG's emails to its Texas-based customers. Thus, Plaintiffs allege that the emails constituted unfair competition. Again, the claim is directly related to the emails. That connection gives rise to specific jurisdiction. Accordingly, the court has personal jurisdiction over ONG.

### c. *Common law unfair competition*

Finally, Plaintiffs allege that ONG is liable for common law unfair competition because ONG made false and misleading representations of fact to distributors, customers, and others, by explicitly and implicitly representing that its flanges are normalized and ASTM-compliant when they are not. *Id.* at 23. Similar to the other claims, Plaintiffs allege that ONG falsely represented the characteristics of its flanges in emails to its Texas-based customers. Thus, this claim is also directly related to the emails. And, because that connection gives rise to specific jurisdiction, the court has personal jurisdiction over ONG.

### 2. **Constitutionally reasonable exercise of jurisdiction**

ONG argues that the court's exercise of personal jurisdiction over it would offend traditional notions of fair play and substantial justice. Dkt. 19 at 20. ONG dedicates one-and-a-half pages to this argument. *Id.* at 20–21. Of that, the majority focuses on the first two *Asahi* factors. *Id.*

First, ONG argues that "Texas courts have no interest in deciding this case as it relates to ONG because ONG lacks substantial contacts with Texas." *Id.* at 21. Next, ONG argues that litigating this case in Texas would cause it to incur a substantial burden. *Id.* at 20–21. In support, ONG points out that: (1) it is an Italian company; (2) it is not licensed to do business in Texas; (3) most records are in Italy; and (4) most witnesses are not in Texas. *Id.* at 21. As a result, ONG would have to pay for airplane tickets, accommodations in Houston, and translators. *Id.* ONG would also have to spend "enormous time" litigating the matter. *Id.* And, ONG would endure "the logistical burden of litigating in this distant forum" 5,000 miles from its Italian offices, "separated by seven time zones," where "proceedings will be conducted in a language other than Italian . . . the first language of [its] corporate representatives and witnesses." *Id.*

ONG also argues that "it is not necessary for ONG to remain a defendant in this case for Plaintiffs to pursue their claims against [co-defendant] Galperti." *Id.* at 21. ONG does not add any additional *Asahi* arguments to its reply or supplemental briefing. *See* Dkts. 28, 59. ONG's bare-bones briefing failed to present a compelling case against the exercise of jurisdiction. *Cf. In re Chinese Manufactured Drywall*, 742 F.3d at 592. Accordingly, the court's exercise of personal jurisdiction over ONG is not constitutionally unreasonable.

Because the court has personal jurisdiction over ONG and because that exercise of jurisdiction is not constitutionally unreasonable, the ONG's motion to dismiss is DENIED.

Signed at Houston, Texas on January 23, 2018.

_____
Gray H. Miller
United States District Judge