UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BOLTEX MANUFACTURING §
COMPANY, LP, *et al.*, §
 §
   *Plaintiffs*, §
 §
v. § CIVIL ACTION H-17-1439
 §
GALPERTI, INC., *et al.*, §
 §
   *Defendants*. §

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendants Officine Nicola Galperti e Figlio S.p.A. ("ONG") and Galperti, Inc.'s ("Galperti") (collectively, "Defendants") motion to dismiss for failure to state a claim, or, in the alternative, a motion for a more definite statement. Dkt. 20. Plaintiffs Boltex Manufacturing Company, L.P. ("Boltex") and Weldbend Corporation ("Weldbend") (collectively, "Plaintiffs") responded. Dkt. 27. Defendants replied. Dkt. 28. Having considered the motion, response, reply, and applicable law, the court is of the opinion that the motion should be DENIED.

**I. BACKGROUND**

This is a false advertising and unfair competition case. Dkt. 1 at 1–3. All parties manufacture carbon steel flanges.[1] *Id.*

This dispute centers on normalization, a heat treatment process that changes the physical composition of carbon steel to increase its machinability and toughness. *Id.* at 1, 8. The process

---

[1]For the purposes of a motion to dismiss, the court accepts all well-pled facts contained in Plaintiffs' complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

involves additional time and resources. *Id.* Thus, it is more expensive for manufacturers to produce normalized flanges than non-normalized (or forged) ones. *Id.* at 1, 8.

Plaintiffs manufacture, market, and sell normalized flanges. *Id.* at 9. Plaintiffs' normalization processes comply with American Society of Testing and Materials ("ASTM") standards. *Id.* at 8–9. Those standards require manufacturers to apply heat treatment to certain types of flanges. *Id.* at 9. Manufacturers can choose from several processes including normalization. *Id.* However, many customers will only purchase certain flanges if they are normalized. *Id.* Plaintiffs stamp normalized flanges to indicate their compliance with ASTM standards. *Id.* at 10. Plaintiffs also indicate normalization in a Mill Test Report ("MTR")—an industry-standard report "used to promote and certify a material's compliance with the appropriate ASTM standards, applicable dimensions, and physical and chemical specifications." *Id.* Further, Plaintiffs charge more for normalized flanges than they do for forged ones. *Id.*

Defendants advertise some flanges as normalized and as meeting the the ASTM standards. *Id.* at 11. Specifically, Defendants stamp their flanges as normalized, just like Plaintiffs do. *Id.* And, Defendants indicate normalization in MTRs that accompany shipments of flanges. *Id.* But, according to Plaintiffs, Defendants flanges: (1) are not normalized; and (2) do not comply with ASTM standards. *Id.*

Plaintiffs sued Defendants for false advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a) as well as common law unfair competition. *Id.* at 23. Defendants move to dismiss under Rule 12(b)(6) or, alternatively, for a more definite statement under Rule 12(e). Dkt. 20.

## II. LEGAL STANDARD

Rule 8(a)(2) requires that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A party against whom claims are asserted may move to dismiss those claims when the nonmovant has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[T]he burden is on the moving party to prove that no legally cognizable claim for relief exists." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed.).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). While the allegations need not be overly detailed, a plaintiff's pleading must still provide the grounds of his entitlement to relief, which "requires more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Evaluating a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Ultimately, the question for a court to decide is whether the complaint states a valid claim when viewed in the light most favorable

to the plaintiff." *NuVasive, Inc. v. Renaissance Surgical Ctr.*, 853 F. Supp. 2d 654, 658 (S.D. Tex. 2012).

### III. APPLICABLE LAW

#### A. Judicial notice

Federal Rule of Evidence 201(b)(2) provides: "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Further, "[t]he court . . . must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). "The court may take judicial notice at any stage of the proceeding." Fed. R. Evid. 201(d).

#### B. False advertising in violation of the Lanham Act[2]

"The Lanham Act was enacted 'to protect persons engaged in such commerce against unfair competition.'" *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1382–84 (5th Cir. 1996) (quoting 15 U.S.C. § 1127). To state a prima facie case of false advertising, a plaintiff must establish: (1) a false or misleading statement of fact about a product; (2) such a statement either deceived, or had the capacity to deceive a substantial segment of potential customers; (3) the deception is material, in that it is likely to influence the consumer's purchasing decision; (4) the product is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue. *Derrick Petrol. Servs. v. PLS, Inc.*, Civil Action No. H-14-1520, 2017 WL 3456920, at *1, *5 (S.D. Tex. Aug.

---

[2]Defendants ask the court to analyze Plaintiffs' claims for false advertising together with both unfair competition claims. *See* Dkt. 20 at 19–22. Defendants did not provide any other substantive grounds against either unfair competition claim. Where, as here, the court rejected Defendants' grounds for dismissing the false advertising claim, no grounds exist for dismissing the unfair competition claims. Accordingly, Plaintiffs' unfair competition claims survive 12(b)(6).

11, 2017) (Rosenthal, J.) (internal alterations omitted) (quoting *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000)).[3]

"To obtain money damages for false advertising under § 43(a) of the Lanham Act, the plaintiff must first demonstrate that the advertisement was (1) literally false; or (2) likely to mislead and confuse customers." *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 375 (5th Cir. 2002). "For a statement to be literally false, the statement must be 'false on its face.'" *Derrick*, 2017 WL 3456920, at *5.

"If the statement at issue is shown to be literally false, the court must assume that it actually mislead consumers, without requiring any evidence of such deception from the plaintiff." *IQ Prods.*, 305 F.3d at 375; *see also Pizza Hut*, 227 F.3d at 497 ("plaintiff need not introduce evidence on the issue of the impact the statements had on customers."). However, "if the statement is . . . misleading or ambiguous . . . the plaintiff must demonstrate actual deception." *IQ Prods.*, 305 F.3d at 375. "The statements at issue must be a specific and measurable claim, capable of being proved false or being reasonably interpreted as a statement of objective fact." *Pizza Hut*, 227 F.3d at 496 (internal quotation omitted).

The statements must be within the meaning of "commercial advertising or promotion under the [Lanham] Act." *See Seven-Up*, 86 F.3d at 1382–83. Because the Lanham Act does not define "advertising or promotion," to determine whether a statement counts as either, courts consider whether it is[:]"

> (1) commercial speech; (2) by a defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the

---

[3] Only the first three elements are at issue. *See* Dkt. 20 at 13 ("Plaintiffs have failed to allege facts sufficient to satisfy elements 1, 2, and 3.").

> representations need not be made in a 'classical advertising campaign,' but may consist instead of more informal types of 'promotion,' the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry.

*Id.* at 1384.[4]

In the Fifth Circuit, "for purposes of the Lanham Act's definition of 'commercial advertising or promotion,' both the required level of circulation and the relevant 'consuming' or 'purchasing' public addressed by the dissemination of false information will vary according to the specifics of the industry." *Seven-Up*, 86 F.3d at 1383–87 (holding that Seven-Up stated a claim for false advertising arising out of a Coca-Cola presentation, but finding evidence was insufficient to show that two intermediate customers switched to Coca-Cola because of that presentation).

## IV. ANALYSIS

### A. Judicial notice

Defendants ask the court to take judicial notice of "ASTM A105 and A961." Dkt. 20 at 10; *see also* Dkt. 29 at 1 n.1. Defendants supplied the court with copies of those standards. Dkts. 20-1, 20-2. While the parties may agree that "[t]he American Society of Testing and Materials has published standards and specifications applicable to carbon steel flanges," the parties dispute which ASTM standards are relevant in this case. *See e.g.* Dkt. 27 at 17. Given that disagreement and Defendants' assertion that "the entirety of Plaintiffs' claims are centralized around the ASTM standards," judicial notice is inappropriate at this time. Dkt. 20 at 11. Defendants can renew their request as the case proceeds. *See* Fed. R. Evid. 201(d). Accordingly, the request is DENIED.

### B. False advertising in violation of the Lanham Act

---

[4]The parties only dispute whether the statements were: (a) made for the purpose of influencing consumers and (b) were sufficiently disseminated. *See* Dkt. 20 at 16; Dkt. 29 at 3–5.

Defendants argue that Plaintiffs' claim for false advertising in violation of the Lanham Act cannot withstand 12(b)(6). Dkt. 20 at 12. The parties dispute whether Plaintiffs allege sufficient facts to support the first three elements of that claim. *See id.* at 13.

### 1. *A false or misleading statement of fact about a product*

Defendants argue that: (1) Plaintiffs' factual allegations do not establish a false statement of fact about Defendants' flanges; (2) statements by third parties fail as evidence of false statements made by Defendants; and that (3) post-sale communications do not constitute advertising or promotion. Dkt. 20 at 9, 11–12. The court will address each argument in turn.

#### a. **False statement**

Defendants challenge Plaintiffs' complaint for "fail[ing] to allege any false statements about Defendants' flanges." *Id.* at 13–15. Defendants also argue that Plaintiffs' complaint is impermissibly conclusory and vauge. *Id.* at 19. Because the latter overlaps with the former, the court addresses both arguments together.

Defendants argue Plaintiffs fail to allege a false statement because ASTM A105 does not require what Plaintiffs have alleged those standards require. *Id.* at 13–14. Defendants also challenge the images in the complaint for their accuracy as evidence of false statements as well as their relevance to ASTM standards. *Id.* at 15; Dkt. 29 at 1–2.

Plaintiffs argue that they allege sufficient facts to show that Defendants' statements were literally false. *See* Dkt. 27 at 10–15, 19–20, 25. According to Plaintiffs, Defendants made statements about their own flanges. *See, e.g.,* Dkt. 1 at 11 ("Defendants advertise the flanges *as ASTM 'A105N' indicating that the flanges (a) meet all the requirements of ASTM A105 and (b) are*

*normalized.*") (emphasis added); *see id.* ("*in advertising materials and catalogs*")[5]; *see id.* at 12 ("Defendants . . . describe their flanges as 'normalized at 900 dgr. C for 1.1/2 h. Cooling from 900 dgr. C in still air,' and as compliant with the requirements of ASTM *in the MTRs* that accompany each flange") (emphasis added); *see id.* at 14 ("*by stamping 'A/SA105N' on the flanges themselves*") (emphasis added). Plaintiffs also allege that those statements were false. *See, e.g.*, *id.* at 16 ("Defendants' flanges are *not normalized*") (emphasis added); *see id.* at 18 ("Defendants *skipped the normalization step entirely*") (emphasis added); *see id.* ("'Normalization' necessarily implies . . . that the steel exhibits certain qualities. *Examination . . . show[s] that these qualities are absent.*") (emphasis added); *see id.* ("Because *Defendants do not normalize their flanges . . .* [their] claim that their Class 400, 600, 900, 1500, and 2500 flanges meet ASTM A105 is also false.") (emphasis added).

Although Defendants challenge the assumptions underlying Plaintiffs' factual allegations, at the motion to dismiss stage, the court accepts all of Plaintiffs' well-pleaded facts as true. *See Twombly*, 550 U.S. at 555 (citations omitted); *see supra* Section I n.1. Accordingly, although the Defendants challenge the veracity of Plaintiffs' allegations, such arguments are irrelevant at this time. Viewed in the light most favorable to Plaintiffs, the complaint fairly alleges that Defendants' statements about its flanges were literally false. *See Derrick*, 2017 WL 3456920, at *5; *see also IQ Prods.*, 305 F.3d at 375.

---

[5]Defendants also challenge (what they construe as) Plaintiffs' allegation that "Defendants falsely advertise their flanges as normalized in Defendants' *own* 'advertising materials and catalogs'" as "vague and conclusory." *Compare* Dkt. 29 at 4 (emphasis added), *with* Dkt. 1 at 11, ¶34 ("Defendants' purported ASTM 'A105N' compliant flanges are advertised in advertising materials and catalogs Defendants distribute to their customers and potential customers."). Defendants argue that these allegations lack factual content and fail to give the court a basis to infer more than the mere possibility of misconduct. Dkt. 29 at 7. The court disagrees. Plaintiffs allege that Defendants advertised their flanges as something they were not through catalogs and other advertising material that they distributed to their customers. That allegation satisfies 12(b)(6).

### b. Statements by third-parties

Defendants also argue that Plaintiffs' claim fails "because the only purported evidence of any advertisement or promotion in the Complaint consists of screenshots from the websites of two *unrelated, third-party* distributors (which are not distributors of Defendants) that simply include 'Galperti' in a list of manufacturers." Dkt. 20 at 11 (emphasis in original). Further, Defendants assert that Plaintiffs fail to allege "advertising or promotion *from or by Defendants*." *Id.* at 16 (emphasis added).

For a motion to dismiss, the court must decide whether "the complaint states a valid claim when viewed in the light most favorable to the plaintiff." *NuVasive, Inc.*, 853 F. Supp. 2d at 658. That decision considers allegations, not evidentiary sufficiency. *See supra* Section I.

Additionally, Defendants' argument that the Plaintiffs "only" allege facts about advertising by third-parties is without merit. *See* Dkt. 20 at 16. While the complaint addresses advertising by "third-party distributors," it also alleges that Defendants advertised their own flanges. *See* Dkt. 1 at 11 ("*Defendants advertise* the flanges *as* ASTM 'A105N'") (emphasis added); *see id.* ("*Defendants'* purported ASTM 'A105N' compliant flanges are advertised in advertising materials and catalogs *Defendants distribute* to their customers and potential customers." ) (emphasis added); *see id.* at 12 ("*Defendants* . . . describe their flanges as . . . normalized . . . and as compliant with the requirements of ASTM *in the MTRs* that accompany each flange") (emphasis added); *see id.* at 14 ("*Defendants further advertise* and promote their flanges as normalized and compliant with ASTM A105 by stamping 'A/SA105N' on the flanges themselves") (emphasis added).

### c. Commercial statements

Defendants advance two arguments for the proposition that the MTRs and stamps on flanges fail as actionable commercial statements. Dkt. 20 at 16 (relying on *Marcyan v. Nissen Corp.*, 578 F.

9

Supp. 485, 507 (N.D. Ind. 1982), *aff'd sub nom*, *Marcyan v. Marcy Gymnasium Equip. Co.*, 725 F.2d 687 (7th Cir. 1983)). Namely, Defendants argue that the timing and dissemination of both disqualify either as a commercial statement. *See id.*

First, Defendants challenge the timing of the statements. *Id.* Defendants characterize the MTRs and stamped flanges as "post-sale communications to consumers who have already purchased a product[.]" Dkt. 20 at 16; *see also* Dkt. 29 at 3. Defendants argue that because the statements were made post-sale, they were not made to influence customers to buy their flanges. Dkt. 20 at 16.

Next, Defendants challenge dissemination of the statements. *Id.* Defendants argue that because the statements are "only seen by the specific customer who has already purchased the product" the statements were not disseminated sufficiently to the relevant purchasing public within the carbon steel flange industry." *Id.* at 16–17.

Further, Defendants argue that Plaintiffs fail "to cite to any case in which a court has allowed a false advertising claim to proceed against a defendant based solely upon *post-sale* communications." Dkt. 29 at 3 (emphasis in original). That is not Plaintiffs' burden. *See* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed.) ("[T]he burden is on the *moving party* to prove that no legally cognizable claim for relief exists") (emphasis added). Nor have Plaintiffs relied solely upon post-sale communications. *See, e.g.*, Dkt. 1 at 11.

And, Defendants distinguish Plaintiffs' authority as "involv[ing] labels that the customer or consumer reads *before* deciding to purchase the product." Dkt. 29 at 4 n.5 (emphasis in original). Yet, Defendants' argument relies entirely on non-binding, factually distinct case law. Dkt. 29 at 4 n.5 (citing cases).[6] And, all of those case rely on the reasoning of *Gillette Co. v. Norelco Consumer*

---

[6]*Interlink Prods. v. F & W Trading, LLC*, Civil Action No. 15-1340, 2016 WL 1260713, at *1, *3–4 (D.N.J. Mar. 31, 2016) (rejecting showerhead manufacturer's false advertising claim arising out of product instructions included in showerhead package that end-consumer received); *Deur v.*

*Prods. Co.*, 946 F. Supp. 115, 135 (D. Mass. 1996)—a non-binding, factually distinct case. *Id.*

*Gillette* held that package inserts did not count as commercial advertising because statements inside a product's packaging—only available post-purchase—did not affect purchasing decisions when consumers bought the product without seeing the package inserts. 946 F. Supp. at 135. *Gillette* relies on *Marcyan,* an earlier non-binding case that pre-dates *Seven-Up*, and is factually distinct. *See* 578 F. Supp. at 507 (endorsement in an exercise device's instruction manual was not actionable when it was puffery, defendants did not make false statements about the device, and when it was not distributed to the general public to promote the device).

Even if the court considered *Gillette* persuasive, Plaintiffs allege a different scenario. Dkt. 1 at 3, 11–12, 16. Unlike *Gillette*, the stamping and inclusion of MTRs confirm the assumption that consumers make when purchasing the flanges, namely that the flanges are of the quality and specifications that they purport to be. *See id.* Plaintiffs argue that stamping and MTRs allow "Defendants [to] convince their distributors to ship and their end use customers to accept non-compliant shipments." Dkt. 27 at 25. If the flanges "fail to meet specifications . . . then they cannot be used." *Id.* at 26. Then, "[t]he contractor refuses the non-compliant shipment and sends it back, and the distributor tries again." *Id.* Thus, according to Plaintiffs, the stamped flanges and MTRs influence purchasing decisions. *Id.* Plaintiffs argue that those "industry-specific realities" make the

---

*Bensussen Deutch Assocs.*, 1:14-CV-01589-ELR, 2015 WL 11256568, at *1, *5 (N.D. Ga. July 8, 2015) (rejecting false advertising claim when plaintiff's only allegation was that "Defendants have distributed to consumers [the] product insert"); *Mori-Lee, LLC v. Sears Holdings Corp.*, No. 13cv3656, 2014 WL 4680739, at *3–4 (S.D.N.Y. Sept. 8, 2014) (granting summary judgment for department store when its post-sale confirmation emails included misrepresentations by third parties when those emails were only available to a particular consumer); *Midwest Canvas Corp. v. Commonwealth Canvas, Inc.*, 07 C 0085, 2008 WL 162757, at *4 (N.D. Ill. Jan. 16, 2008) (invoice accompanying an order did not induce consumers to buy defendant's goods or services because consumers already decided to buy).

stamped flanges and MTRs actionable commercial statements. Dkt. 27 at 24. Under *Seven-Up*, Plaintiffs' allegations survive 12(b)(6). *See* 86 F.3d at 1383–87.

### 2. *Deception*

Defendants argue that Plaintiffs failed to plead facts supporting their allegation "that the alleged false statements actually deceived or have a tendency to deceive a substantial segment of Defendants' customers, which is the second element of a false advertising claim under the Lanham Act." Dkt. 20 at 17. Because Plaintiffs allege that Defendants' statements are literally false, they do not need to allege actual deception or a tendency to deceive. *See IQ Prods.*, 305 F.3d at 375. Indeed, because Plaintiffs have alleged that Defendants' statements are literally false, "the court must assume that [the statements] actually mislead consumers, without requiring any evidence of such deception from the plaintiff[s]." *Id.*; *see also Pizza Hut*, 227 F.3d at 497 ("plaintiff[s] need not introduce evidence on the issue of the impact the statements had on customers."). Even so, Plaintiffs allege actual deception and a tendency to deceive. *See e.g.*, Dkt. 1 at 18–19. For either reason, Defendants' argument is without merit.

### 3. *Materiality*

Defendants argue that Plaintiffs fail to allege any facts "to support a conclusory allegation that the alleged deception was material or likely to influence a consumer's purchasing decision." Dkt. 20 at 18. The court disagrees. *See Pizza Hut*, 227 F.3d at 497; Dkt. 1 at 18; Dkt. 27 at 27.

For these reasons, the court finds that Plaintiffs' claim for false advertising survives 12(b)(6). Accordingly, Defendants' motion to dismiss that claim is DENIED. And, because Defendants' arguments for dismissing the unfair competition claims relied entirely on the arguments for dismissing the false advertising claim, Defendants' motion to dismiss both unfair competition claims is also DENIED.

### C. More definite statement

In the alternative, Defendants move for a more definite statement. Dkt. 20 at 22. A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). However, motions for more definite statement are "generally disfavored." *Lehman Bros. Holdings, Inc. v. Cornerstone Mortg. Co.*, No. H-09-0672, 2009 WL 504977, at *1 (S.D. Tex. May 28, 2009) (Rosenthal, J.) (collecting authorities). Because the court finds that Defendants are "complaining of matters that can be clarified and developed during discovery, not matters that impede [their] ability to form a responsive pleading, an order directing the plaintiff[s] to provide a more definite statement is not warranted." *Id.*; *see also* Dkt. 20 at 22–23. Accordingly, Defendants' motion for a more definite statement is DENIED.

### V. CONCLUSION

For these reasons, Defendants' alternative motions (Dkt. 20) to dismiss for failure to state a claim or for a more definite statement are both DENIED.

Signed at Houston, Texas on March 29, 2018.

_____
Gray H. Miller
United States District Judge

13