UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BOLTEX MANUFACTURING COMPANY, LP, *et al.*, | § § § § § | |
| *Plaintiffs*, | § | |
| v. | § § | CIVIL ACTION H-17-1439 |
| GALPERTI, INC., *et al.*, | § § § | |
| *Defendants*. | § | |

### ORDER

Pending before the court are defendant Officine Nicola Galperti e Figlio S.p.A.'s ("ONG") motions to: (1) reconsider; (2) stay discovery; and, alternatively, (3) certify this order for interlocutory appeal. Dkt. 81. Plaintiffs Boltex Manufacturing Company, L.P. ("Boltex") and Weldbend Corporation ("Weldbend") (collectively, "Plaintiffs") responded. Dkt. 97. ONG replied. Dkt. 98. Having considered the motions, response, reply, and applicable law, the court is of the opinion that the motions should be DENIED.

### I. BACKGROUND

ONG asks the court to reconsider its finding of specific jurisdiction.[1] Dkt. 81, Dkt. 75 (denying ONG's motion to dismiss (Dkt. 19) under Federal Rule of Civil Procedure 12(b)(2)). Specifically, ONG argues that: (1) its email responses to Texas customers cannot constitute commercial advertising under the Lanham Act; (2) the Plaintiffs' evidence did not support a prima facie case for personal jurisdiction; and (3) the court did not analyze purposeful

---

[1] The court also found that the exercise of personal jurisdiction over ONG was not constitutionally unreasonable. Dkt. 75 at 8–9. "ONG does not move for reconsideration on this point." Dkt. 81 at 17 n.5.

availment. Dkt. 81 at 9. ONG also asks the court to stay discovery pending resolution of the instant motion. *Id.* Alternatively, ONG asks the court to certify this order for interlocutory appeal if it denies the instant motion or grants it and still finds that personal jurisdiction exists. *Id.*

## II. ANALYSIS

### A. Motion to reconsider

*1. ONG's email responses*

Once again, ONG insists that the court cannot analyze specific jurisdiction without deciding whether its email responses to Texas customers count as commercial advertising under the Lanham Act.[2] *Compare* Dkt. 81 at 22–28, *with* Dkt. 59 at 10. Once again, the court disagrees. *See* Dkt. 75 at 6. The court will not superimpose the Rule 12(b)(6) standard onto ONG's Rule 12(b)(2) motion. Thus, this argument cannot support a grant of the instant motion.

*2. Plaintiffs' evidence*

According to ONG, Plaintiffs failed to make a prima facie case for personal jurisdiction because the latter relied on Andrea Galperti's deposition. Dkt. 81 at 9–10, 13. Even though ONG cited to its CEO's affidavit in its own 12(b)(2) motion, ONG asserts that because "Plaintiffs chose to depose Mr. Galperti in his individual capacity, [and] not as a corporate representative . . . his testimony does not bind ONG nor does it represent ONG's position on a topic." *Id.* at 13; *see also* Dkt. 60 at 4–5, 9–10. ONG also asserts that Mr. Galperti "spoke only in generalities and hypotheticals." Dkt. 81 at 14.

---

[2]ONG asserts that a negative answer to that question necessarily negates specific jurisdiction. Dkt. 81 at 22. ONG asserts that the court "relied upon the possibility that the carbon steel flange market is small enough and the potential purchasers [sic] limited such that individualized email responses could constitute 'commercial advertising.'" *Id.* According to ONG, "[i]f there was no possibility that the emails could constitute advertising, then the emails could not give rise to Plaintiffs' claims and there would be no 'connection' to establish specific jurisdiction." *Id.*

Attacking Mr. Galperti's capacity does not impact whether Plaintiffs met their burden. Nor does any divergence between Mr. Galperti's affidavit and his testimony because the court must resolve factual differences in the Plaintiffs' favor. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) ("conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists") (internal citation omitted; emphasis in original). ONG failed to show that Plaintiffs presented insufficient evidence to support a prima facie case of specific jurisdiction. Therefore, this ground cannot support a grant of the instant motion.

3. *Purposeful availment*

ONG argues that the court analyzed specific jurisdiction without addressing the purposeful availment prong. Dkt. 81 at 9, 16–22. ONG argues that its email responses cannot count under that prong because it did not initiate the communications to Texas customers. *Id.* at 18 ("Responding to an email RFQ inquiry into whether the flanges can be normalized without ONG initiating the communication or reaching into the Texas forum does not provide [a] fair warning . . . that the activity may subject [it] to the jurisdiction of a foreign sovereign.").

Plaintiffs argue that ONG waived a purposeful availment challenge by only addressing the nexus prong. Dkt. 97 at 14. Plaintiffs also argue that ONG's emails count toward purposeful availment because ONG willingly responded to Texas customers via email, and because those communications contained the allegedly false representations. *Id.* at 9. Both parties cite the same case, *Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 490 (5th Cir. 2018), to support their divergent positions. Dkt. 81 at 20–21; Dkt. 97 at 7–10.

*Trois* provides recent Fifth Circuit analysis on specific jurisdiction. 882 F.3d at 487. In that case, a Kentucky citizen and middleman contacted a collector, domiciled in Texas, about selling his

3

collectibles through an Ohio-based auction company. *Id.* at 487. After the collector expressed interest, the middleman arranged two conference calls. *Id.* at 488. Both times, the company's president joined in from Ohio. *Id.* Based on those conversations, the parties preliminarily agreed that the company would auction off some of the collector's items. *Id.* Then, the collector traveled to Ohio where the parties executed a contract. *Id.* The collector alleged that during the conference calls, the president misrepresented the company's marketing tools and the auction arrangements. *Id.* The collector sued the Ohio company and its president in Texas for breach of contract and fraud. *Id.*

There, the Fifth Circuit rejected specific jurisdiction as to breach of contract because the conference calls could not satisfy the purposeful availment prong. *Id.* at 489. However, it found purposeful availment and a nexus as to fraud:

> This case falls within the fuzzy boundaries of the middle of the spectrum. *Although [the president] did not initiate the conference call to [the collector] in Texas, [the president] was not a passive participant on the call. Instead he was the key negotiating party who made representations regarding his business in a call to Texas. It is that intentional conduct on the part of [the president] that led to this litigation.* So [the president] is not being haled into Texas court 'based on [his] random, fortuitous, or attenuated' contacts . . . [t]herefore, we hold that [the president], *a willing participant on a conference call who actively engaged in conversation regarding his business, is more akin to an initiator of a phone call* as contrasted to the recipient of an uninitiated, unsolicited phone call. The defendants should have reasonably anticipated being haled into Texas court as a result of reaching out to Texas via phone in order to garner business and make specific representations.

*Id.* at 491–93 (internal citation omitted; emphasis added).

Here, the allegations about ONG's email responses closely resemble the *Trois* conference call allegations. *Compare id.*, *with* Dkt. 54 at 5–7, 16. Like in *Trois*, although ONG did not initiate the communications to Texas customers, it was not simply a passive participant, either. *See* 882 F.3d at 491–93. Instead, ONG "made representations regarding [its] business in [emails] to Texas. It is

4

that intentional conduct on the part of [ONG] that led to this litigation." *See id.*; *see also* Dkt. 75 at 2, 6–8. Accordingly, as for purposeful availment, ONG "should have reasonably anticipated being haled into [a] Texas [federal] court as a result of reaching out to Texas via [email] in order to garner business and make specific representations." *See Trois*, 882 F.3d at 491–93. Therefore, the court's determination as to specific jurisdiction stands and this challenge fails as a basis for granting ONG's motion to reconsider.

Because each of ONG's three grounds fail, so too must its motion. Accordingly, the motion to reconsider is DENIED.

### B. Motion to stay discovery

ONG asks the court to stay discovery pending resolution of the motion to reconsider. Dkt. 81 at 9. Because the court has resolved the latter, the former is DENIED as MOOT.

### C. Motion to certify for interlocutory appeal

ONG asks the court to certify this order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and stay all proceedings as to ONG until the Fifth Circuit resolves that appeal. Dkt. 81 at 9. Under § 1292(b), the district court can certify an order for interlocutory appeal if it involves: "(1) a controlling question of law; (2) as to which there is a substantial ground for difference of opinion; and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). ONG's briefing as to the second element fails to provide sufficient grounds to certify this order under § 1292(b). *See* Dkt. 81 at 30–32. Accordingly, the motion is DENIED.

### III. CONCLUSION

For these reasons, ONG's motion to: (1) reconsider is DENIED; (2) stay discovery is DENIED as MOOT; and (3) certify this order for interlocutory appeal is DENIED. Dkt. 81

Signed at Houston, Texas on May 30, 2018.

_____
Gray H. Miller
United States District Judge