# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| BOLTEX MANUFACTURING COMPANY, L.P., and WELDBEND CORPORATION, | § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION H-17-1439 |
| GALPERTI, INC. and OFFICINE NICOLA GALPERTI E FIGLIO S.P.A. | § § § § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendants Officine Nicola Galperti e Figlio S.p.A. ("ONG") and Galperti, Inc.'s ("Galperti") (collectively, "Defendants") motion for summary judgment. Dkt. 146. Plaintiffs Boltex Manufacturing Company, L.P. ("Boltex") and Weldbend Corporation ("Weldbend") (collectively, "Plaintiffs") responded. Dkt. 191. Defendants replied. Dkt. 224. Also pending before the court is Plaintiffs' motion for summary judgment. Dkt. 130. Galperti responded.[1] Dkt. 178. Plaintiffs replied. Dkt. 214. Having considered the motions, responses, replies, and applicable law, the court is of the opinion that both motions should be GRANTED.

## I. BACKGROUND

This is a false advertising and unfair competition case. Dkt. 1 at 1–3. This dispute centers on the process of normalization. *Id.* at 1, 8. Normalization is a costly heat treatment process that changes the physical composition of carbon steel to increase its toughness and ductility. *Id.* The American Society of Testing and Materials sets out standards that require manufacturers to apply heat treatment to certain types of flanges. *Id.* at 8–9. There are several different methods available

---

[1] Defendant ONG was not a party to this response. *See* Dkt. 178.

for heat treatment, including normalization. *Id.* at 9. Although it is not required by the standards, many customers require that certain flanges be normalized. *Id.*

Both Plaintiffs and Defendants manufacture carbon steel flanges. *Id.* at 1–3. Plaintiffs sued Defendants for false advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), as well as common law unfair competition. *Id.* at 23. Plaintiffs allege that Defendants advertise their flanges as "normalized" when they are not. Specifically, Plaintiffs allege that Defendants falsely advertise when they: (1) stamp their flanges as normalized; (2) indicate normalization in a Mill Test Report; (3) advertise their flanges in catalogs, brochures, price lists, and web sites of third party distributors of Defendants' flanges; and (4) indicate that their flanges were normalized in emails with potential customers. *Id.* at 11; Dkt. 77-1 at 9; Dkt. 77-2 at 7–8.

Galperti counterclaimed that: (1) Plaintiffs Boltex and Weldbend falsely advertised their products as "Made in the USA" and/or "American Made"; (2) Weldbend made misrepresentations regarding the "traceability" of its flanges and yield strength; and (3) Boltex made misrepresentations in the Reference Manual published on its website.[2] Dkt. 46. Both parties have moved for summary judgment. Dkt. 146; Dkt. 130.

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material

---

[2] ONG filed its own answer which did not include a counterclaim. Dkt. 151.

fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

### III. APPLICABLE LAW

To prove a false advertising claim under the Lanham Act, a plaintiff must establish: (1) a false or misleading statement of fact about a product; (2) such a statement either deceived, or had the capacity to deceive a substantial segment of potential customers; (3) the deception is material, in that it is likely to influence the consumer's purchasing decision; (4) the product is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue. *Derrick Petrol. Servs. v. PLS, Inc.*, Civil Action No. H-14-1520, 2017 WL 3456920, at *5 (S.D. Tex. Aug. 11, 2017) (Rosenthal, J.) (internal alterations omitted) (quoting *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000)). "The failure to prove the existence of any element of the prima facie case is fatal to the plaintiff's claim." *Id.*

### IV. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**A.     False Advertising in Violation of the Lanham Act**

Defendants argue that Plaintiffs' claim for false advertising in violation of the Lanham Act cannot survive summary judgment because, *inter alia*, Plaintiffs cannot show injury. Dkt. 146 at 12–31.

Under the Lanham Act, a plaintiff must establish that he has been injured or is likely to be injured. *Derrick Petrol. Servs.*, 2017 WL 3456920, at *5. To prove injury, a plaintiff must provide evidence that consumers would have bought the plaintiffs' products instead of those of the defendant

in the absence of the allegedly false and misleading statements. *IQ Prod. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 376 (5th Cir. 2002)*; Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140, 134 S. Ct. 1377, 1395 (2014).

In Lanham Act cases involving comparative advertisement, courts may sometimes presume causation and injury. Dkt. 191 at 19 (citing *Greater Houston Transportation Co. v. Uber Techs., Inc.*, 155 F. Supp. 3d 670, 703–4 (S.D. Tex. 2015)). However, in those cases, the alleged advertisement at issue engaged in direct comparison. *See Uber Techs., Inc.*, 155 F. Supp. 3d at 686 (constituting comparative advertisement where the false advertisements compared Ubert's safety and that of the taxi industries with statements such as "[w]e're confident that every ride on the Uber platform is safer than a taxi); *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1334 (8th Cir. 1997) (finding comparative advertisement where one of the advertisements at issue was titled "Competitive Filter Evaluation for Optimizing Gas Operations: Pall versus Porous Media" and compared the performance of a Pall filter with a Porous filter).

Here, Plaintiffs argue that this is a comparative advertising case because "Defendants' advertising specifically references Boltex and Boltex's inventory." Dkt. 191 at 19. However, Plaintiffs only point to deposition testimony that Galperti sells the same types of flanges as described in the Boltex price sheet. *Id.*; *see also* Dkt. 191, Exh. H, Exh. 13 (Casner Dep. 139:24–140:5). Plaintiffs also argue that Defendants use "Boltex's own price list in describing [their] flanges." Dkt. 191 at 19. Plaintiffs point to an email between a Galperti employee and a potential client where the Galperti employee uses the Boltex price list to quote prices for their own flanges. Dkt. 191, Exh. H, Exh. 39; *see also* Dkt. 226-10 at 5 (Casner Depo. 134:2–15)(explaining the email). However, this is simply evidence that Defendants were *using* the price sheet, this is not evidence of a

4

comparison.³ The email does not compare the prices of Boltex's carbon steel flanges to Galperti's steel flanges. Plaintiffs also argue that Galperti uses Boltex's price list and then offers a variable discount to undersell Boltex who does normalize their flanges while Defendants allegedly do not. Dkt. 191 at 19. Again, Plaintiffs have not proffered any summary judgment evidence to support the allegation that Defendants offer a discount to undersell Plaintiffs.⁴

Even if the court could somehow craft a comparison because Defendants used Boltex's price sheet to quote prices for their own flanges, it would not make sense when the court considers why the presumption exists in comparative advertisement cases. The presumption exists because "[a] misleading comparison to a specific competing products necessarily diminishes that product's value in the minds of the consumer." *Healthpoint, Ltd. v. Stratus Pharm., Inc.*, 273 F. Supp. 2d 871, 885 (W.D. Tex. 2001). Here, there is no reason to suggest that the value of Plaintiffs' flanges is diminished in the minds of the consumer when Defendants used the price sheet. Thus, this is a not a comparative advertisement case and the court will not presume injury.

Furthermore, Plaintiffs' only additional evidence of injury is inadmissible.⁵ Although material offered in support of summary judgment evidence may be presented in a form that would not, in itself, be admissible at trial, the substance of the evidence must be admissible at trial. Fed.

---

³ Further, there is evidence that Boltex is one of the few companies that offers a price sheet and that many competitors may use Boltex's price sheet as a guideline to set their prices. Dkts. 226-8 (Adam Depo. 161:8–162:5), *see also* Dkt. 226-15 (Horton Depo. 42:12–25). There is also evidence that the Boltex price list is just a list price and that Boltex applies a different multiplier to the price sheet for different distributors to determine the final price for each distributor. Dkt. 226-8 (Adam Depo. 48:4–24).

⁴ Plaintiffs' summary judgment evidence consisted of deposition testimony that simply said that the multiplier Galperti uses "fluctuates very often" and that sometimes it can be "relative standard for six months." Dkt. 191 at 19, *id.* Exh. H, Exh. 13 (Casner Depo. 278:11–17).

⁵ Plaintiffs do not argue that their damages expert, Thomas Briven, establishes injury. Dkt. 191 at 24.

5

R. Civ. P. 56(c); *see Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017). To prevent the use of materials that lack authenticity or violate the rules of evidence, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The comments to the Rule indicate that "the burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56, Advisory Comm. Notes, 2010 Amendment.

Here, to prove that Plaintiffs lost sales to Defendants, Plaintiffs provided testimony from their salesmen that reached out to customers when they lost a sale. Dkt. 191 at 20–21. The customers confirmed to the salesmen that Plaintiffs lost the sales to Defendants. *Id.* Thus, the proffered testimony that Plaintiffs lost a sale to Defendants only comes from the salesmen. Plaintiffs also provided testimony that they "believe" they have lost sales to Defendants. *Id.* at 20. Defendants object that this is hearsay and speculative.[6] Dkt. 224 at 4–5. The court agrees. The testimony consists of out court statements offered for the truth of the matter asserted. Fed. R. Evid. 801(c). Additionally, Plaintiffs have not shown that it can present the substance of the evidence in a form that would be admissible in court. Thus, the court does not have any summary judgment evidence that creates a genuine issue of material fact that Plaintiffs were injured as a result of Defendants' alleged misrepresentations. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995) (evidence based on hearsay should not be considered at summary judgment).

Accordingly, Defendants' motion for summary judgment on Plaintiffs' Lanham Act is GRANTED. And, because Plaintiff's unfair common law competitions are based on their Lanham

---

[6] Specifically, Defendants argued that "the alleged 'evidence' of lost sales constitutes speculation, hearsay, or conclusory testimony, which are all inadmissible." Dkt. 224 at 4–5. The court is treating this as an objection to the summary judgment evidence.

Act claims, summary judgment on both unfair competitions is also GRANTED. *Tercel Oilfield Prod. USA L.L.C. v. Alaskan Energy Res., Inc.*, No. CIV.A. H-13-3139, 2014 WL 645380, at *4 (S.D. Tex. Feb. 19, 2014) ("Courts in the Fifth Circuit generally analyze a Lanham Act deceptive advertising claim and a Texas unfair competition claim together.")

### V. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**A.    Counts I and II**

Plaintiffs seek summary judgment on Counts I and II of Galperti's counterclaims for false designation of origin and false advertising under the Lanham Act. Dkt. 130 at 4–23. In those counts, Galperti claims that: (1) Plaintiffs advertise their carbon steel flanges and certain high yield carbon steel flanges as, *inter alia*, "American made" and "Made in the USA" and (2) that Weldbend "advertises its goods as 'made in USA' with 'unquestionable traceability' and 'from melt to your hands'". Dkt. 46 at ¶ 39, ¶ 47, ¶ 58. Galperti is seeking both damages and injunctive relief. *Id*. at ¶ 56, ¶ 68, ¶ 75, ¶ 76.

As part of its prima facie case for false advertisement under the Lanham Act, a party must prove that it has been injured or that it is likely to be injured as a result of the misrepresentation. *Derrick Petroleum Servs.*, 2017 WL 3456920, at *5. Even if a plaintiff fails to prove actual harm, he may establish that he was in some way injured. *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 463 (5th Cir. 2001). A party seeking injunctive relief must at least prove the likelihood of injury, even though it does not need to prove actual injury. *Derrick Petroleum Servs.*, 2017 WL 3456920, at *5; *Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distrib. Co.*, 520 F.3d 393, 401 (5th Cir.2008) ("[A]t least the likelihood of injury must be proven in this case even if only injunctive relief is to be ordered.").

Plaintiffs argue that Galperti does not have any evidence to show that it has been injured or is likely to be injured because of Plaintiffs' alleged false advertising. Dkt. 130 at 20–23.[7] To prove actual harm, a plaintiff must provide evidence that consumers would have bought plaintiffs' products instead of those of defendant in the absence of the allegedly false and misleading statements. *IQ Prod. Co.*, 305 F.3d 368, 376 (5th Cir. 2002). Here, Defendants have not presented any summary judgment evidence that customers would have bought Defendants' products instead of Plaintiffs' in the absence of the allegedly misleading statements. There is also no evidence that Plaintiffs' profits were the result of the allegedly false advertising. In fact, Galperti's damages expert, Walter Bratic, assumes that there will be evidence at trial establishing injury. Dkt. 144-5 at 11 (Bratic Depo. 42:2–10). Thus, Galperti has not created a genuine issue of material fact that it was actually injured.

Galperti has also not provided any evidence that creates a genuine issue of material fact that it was likely injured. Galperti conclusorily states that "[b]ecause it is undisputed that [Plaintiffs] and Galperti are in competition, there is evidence that [Plaintiffs'] advertising is likely to harm Galperti,." Dkt. 178 at 22.

In some cases, a party need not provide direct evidence of injury if the party provides evidence that the parties were competitors and that the plaintiff was in some way injured. *See, e.g., Logan*, 263 F.3d at 463; *see also Schlotzsky's, Ltd. v. Sterling Purchasing & Nat. Distribution Co.*, 520 F.3d 393, 401 (5th Cir. 2008). However, in those cases, there was sufficient evidence that allowed the jury to make that inference. *Logan*, 263 F.3d at 463 (finding there was sufficient evidence because: the plaintiff had a direct business interest in the sales of the disputed product in which he had a patented method, the plaintiff's claims against defendant were based on a license

---

[7] Galperti does not distinguish between its claims against Plaintiffs for purposes of the injury analysis and the court will do the same. Dkt. 178 at 21–23.

agreement regarding plaintiffs' patented method, and plaintiff's ability to license his patented method may have been directly affected by defendant's false advertising); *Schlotzsky's*, 520 F.3d at 401 (finding sufficient evidence of likelihood of injury when the evidence created an "unavoidable inference" that the "misrepresentation was done to maximize [the defendant's] bargaining power and therefore its income by substituting itself for other alternatives that might have been available.").

Here, Galperti has not presented any evidence that would allow a fact finder to infer that the parties are competitors in the market for U.S.-sourced flanges. Galperti's strongest evidence of competition is Boltex's president affirmatively answering that he "generally considers flanges that are made from U.S. material and flanges made from non-US material to be competing with each other." Dkt. 178, Exh. 2, Exh. 6 (F. Bernobich Depo 164:6-16). While this may raise a possibility of injury, this evidence is so minimal that it does not create a genuine issue of material fact as to the likelihood of injury.[8] Thus, summary judgment as to Counts I and II is GRANTED.

**B.      Count III**

Plaintiffs also seek summary judgment on Galperti's common law claim of unfair competition in Count III. Dkt. 130 at 23–24. Unfair competition requires that the "plaintiff show an illegal act by the defendant which interfered with the plaintiff's ability to conduct business." *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000). "Although the illegal act need not necessarily violate criminal law, it must be an independent tort." *Id.*

Galperti alleged unfair competition in three ways. First, Galperti alleged unfair competition based on its Lanham Act claims. Dkt. 46 ¶¶ 70–71. Because summary judgment has been granted

---

[8] A party seeking injunctive relief must also show "irreparable harm if the injunction is not granted." *Logan*, 263 F.3d at 465. Galperti has not shown the likelihood of injury, much less irreparable harm. Galperti did not even address irreparable harm in their briefing.

on the Lanham Act claims, the part of Galperti's unfair competition claim that relies on the Lanham Act claims also fails. *Tercel Oilfield Prod. USA L.L.C.*, 2014 WL 645380, at *4.

Galperti also alleged unfair competition when Weldbend underreported the yield strengths of its flanges, and when Boltex "misrepresented itself as having expertise in the field of carbon steel flanges and misrepresenting to consumers what the technical standards are for ASTM A105 carbon steel flanges." Dkt. 46 ¶¶ 72–73. However, Galperti has not provided any summary judgment evidence that these acts interfered with their ability to conduct business. Thus, summary judgment is granted on all of Galperti's unfair competition claims.

## VI. CONCLUSION

For these reasons, both motions for summary judgment (Dkt. 146; Dkt. 130) are GRANTED.

Signed at Houston, Texas on June 21, 2019.

_____
Gray H. Miller
Senior United States District Judge